IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**ELIZABETH INGE, individually, and**
**JOHNNY INGE, individually,**

      **Plaintiffs,**
      vs.                                          **CIVIL NO. 2:17-cv-00221-SMV-CG**

**COVENANT MEDICAL GROUP, a**
**Foreign non-profit corporation doing**
**Business in the state of New Mexico as**
**Covenant Family Health Care Center,**

      **Defendant.**

## MOTION OF COVENANT MEDICAL GROUP FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT

**COMES NOW** Defendant Covenant Medical Group ("CMG"), by and through its attorneys of record, Atwood, Malone, Turner and Sabin, P.A., and hereby moves this Court for summary judgment on all of Plaintiffs' claims against CMG, and as grounds therefor states:

### I.
### Introduction

From approximately 2004 until the beginning of 2015, David Jones, a licensed nurse practitioner, worked at the Portales Medical Clinic in Portales, New Mexico (a clinic not affiliated with CMG). Johnny Inge was a patient of the Portales Medical Clinic off and on from approximately 2004 to 2013. From 2011 to 2013, Johnny Inge participated in a scheme wherein he obtained prescriptions (in his own name and the names of other individuals) from Mr. Jones, in exchange for sharing narcotics with Mr. Jones. Elizabeth Inge learned of the illegal scheme in approximately 2012 and Johnny Inge began sharing his narcotics with Elizabeth Inge. In March 2014, without knowledge of these criminal activities, CMG hired Mr. Jones to work as a nurse

1

practitioner in its Clovis clinic. Months after Mr. Jones started working at CMG, Plaintiffs reconnected with Mr. Jones and continued their scheme of obtaining and filling prescriptions they knew were not valid. The scheme ended in approximately February 2015 when, in exchange for immunity from criminal prosecution, Plaintiffs assisted the Drug Enforcement Agency ("DEA") in arresting Mr. Jones. Plaintiffs, in filing their lawsuit against CMG, are now trying to benefit from their own illegal behavior. The wrongful conduct rule bars Plaintiffs' claims against CMG. *See Inge v. McClelland*, 2017 U.S. Dist. LEXIS 98386 (D.N.M. June 26, 2017).

## II.
## Undisputed Material Facts

Under Fed. R. Civ. P 56 (c)(10(A), the following facts are undisputed, for purposes of this motion only:

**Plaintiffs' history and/or wrongful conduct prior to CMG's hiring of Mr. Jones**

1. Johnny Inge was a patient of Mr. Jones and the Portales Medial Clinic (a clinic unaffiliated with CMG) off and on from approximately 2004 to 2013. *See Deposition of J. Inge, page 14, lines 6-10, page 25, lines 17-25, page 26, lines 1-18, attached hereto as Exhibit 1; see also Plaintiff Johnny Inge's Answers to Interrogatory No. 8, attached hereto as Exhibit 6; see deposition of Brent Hastings, page 10, lines 24-25, page 11, lines 1-16, attached hereto as Exhibit 7.*

2. Johnny Inge first suspected that Mr. Jones was addicted to pain killers in approximately 2007 or 2008, after Jones suffered a back injury, but continued to see him. *See Deposition of J. Inge, page 20, lines 11-20, attached hereto as Exhibit 1; see also UMF No. 1.*

3. Starting in approximately 2011 or 2012, Mr. Jones wrote prescriptions for Jennifer Inge and Elizabeth Queener (aka Elizabeth Inge) and gave them to Johnny Inge to be filled. *See*

*Deposition of J. Inge, page 14, lines 24-25, page 15, lines 1-9 and lines 20-25, page 16, lines 1-20, attached hereto as Exhibit 1.*

    4.      Johnny Inge then filled the prescriptions for the purpose of sharing them with Mr. Jones.  *See Deposition of J. Inge, page 16, lines 1-10, attached hereto as Exhibit 1.*

    5.      Mr. Jones left the prescriptions for Johnny Inge in alleys because neither Mr. Jones nor Johnny Inge wanted anyone to know what they were doing.  *See Deposition of J. Inge, page 25, lines 17-25, page 26, lines 1-5, page 34, lines 9-15, attached hereto as Exhibit 1.*

    6.      Initially, neither Jennifer Inge nor Elizabeth Inge knew that Johnny Inge was filling prescriptions in their names and sharing them with Mr. Jones.  *See Deposition of J. Inge, page 14, lines 24-25, page 15, lines 1-9 and 21-25, page 16, lines 1-25, page 17, lines 1-7 and 11-21, attached hereto as Exhibit 1.*

    7.      Later, Johnny Inge advised Elizabeth Inge of his arrangement with Mr. Jones, and in 2012, Johnny Inge shared these prescriptions with Elizabeth Inge.  *See Deposition of E. Inge, page 13, lines 8-11, page 20, lines 11-16, page 21, lines 8-14, attached hereto as Exhibit 2.*

    8.      Johnny Inge continued the scheme of filling prescriptions in other people's names and sharing those narcotics with Mr. Jones until the summer of 2013. *See Deposition of J. Inge, page 24, lines 7-25, page 25, lines 1-16, attached hereto as Exhibit 1.*

    9.      Johnny Inge would pick up the prescriptions in the alley behind Mr. Jones' house. *See Deposition of J. Inge, page 25, lines 17-23 and page 34, lines 9-15 attached hereto as Exhibit 1.*

10. Elizabeth Inge accompanied Johnny Inge on at least one occasion to pick up a prescription from the alley of Mr. Jones' home. *See Deposition of E. Inge, page 45, lines 20-25, page 46, lines 1-4, attached hereto as Exhibit 2.*

11. Prior to Mr. Jones beginning his employment with CMG, Johnny and Elizabeth Inge had a long-time addiction to prescription pain medications and alcohol. *See Deposition of E. Inge, page 67, lines 1-5, page 69, lines 6-8, page 78, lines 20-23, page 89, lines 8-11, attached hereto as Exhibit 2; see also Deposition of J. Inge, page 62, lines 16-25, page 63, lines 1-17, attached hereto as Exhibit l; see also Deposition of J. Inge (pharmacy case), page 32, lines 13-25, page 33, lines 1-3, attached hereto as Exhibit 3; see also Deposition of E. Inge (pharmacy case), page 9, lines 23-25, page 10, lines 1-25, page 11, lines 1-25, page 12, lines 1-17, page 16, lines 6-12, attached hereto as Exhibit 4.*

12. Prior to Mr. Jones becoming an employee of CMG, Johnny Inge claims to have suffered "great, great mental stress, emotional distress, physical distress" due to his use of prescription pain medications. *See Deposition of J. Inge, page 72, lines 17-23, attached hereto as Exhibit 1.*

**Plaintiffs' conduct after Mr. Jones became an employee of CMG**

13. Mr. Jones started working for CMG in its Clovis clinic on March 17, 2014. *See Defendant's Answer to Interrogatory, No. 8, attached hereto as Exhibit 5.*

14. After Mr. Jones became an employee of CMG, Mr. Jones contacted Johnny Inge and advised that he was working at CMG. *See Deposition of J. Inge, page 26, lines 6-25, page 27, lines 1-25, page 28, lines 1-25, page 29, lines 1-17, attached hereto as Exhibit 1.*

4

15. During Johnny Inge's first visit to CMG with Mr. Jones, Mr. Jones gave Johnny Inge one prescription for oxycodone to be scanned into the medical chart. *See Deposition of J. Inge, page 30, lines 13-25, page 31, lines 1-14, attached hereto as Exhibit 1.*

16. During the same visit, Mr. Jones wrote additional prescriptions, put them in Johnny Inge's pocket, and asked Johnny Inge to get them filled. *See Deposition of J. Inge, page 30, lines 13-25, page 31, lines 1-14, attached hereto as Exhibit 1.*

17. Johnny Inge did not show anyone at CMG the prescriptions that Mr. Jones placed in his pocket. *See Deposition of J. Inge, page 31, lines 17-19, attached hereto as Exhibit 1.*

18. Thereafter, Johnny Inge began picking up prescriptions for himself and Elizabeth Inge and presenting them to Bob's Budget Pharmacy for the purpose of obtaining pills for themselves and Mr. Jones. *See Deposition of J. Inge, page 32, lines 15-24, attached hereto as Exhibit 1; see also Deposition of E. Inge, page 7, lines 17-25, page 8, lines 1-6, attached hereto as Exhibit 2; Deposition of J. Inge (pharmacy case), page 14, lines 24-25, page 15, lines 1-10, page 24, lines 18-20, attached hereto as Exhibit 3; Deposition of E. Inge (pharmacy case), page 16, lines 21-25, attached hereto as Exhibit 4.*

19. Johnny Inge would pick up these prescriptions in (a) Mr. Jones' vehicle; (b) the alley of Mr. Jones' home; and (c) Grady, NM (40 miles from Clovis) to avoid detection. *See Deposition of J. Inge, page 34, lines 1-25, page 35, lines 1-14, page 37, lines 19-25, page 38, lines 1-12, lines 24-25, page 39, lines 1-7, attached hereto as Exhibit 1.*

20. On at least one occasion, Elizabeth Inge accompanied Johnny Inge when he picked up prescriptions from Mr. Jones' car and left pills in his car. *See Deposition of E. Inge, page 45,*

5

*lines 20-25, page 46, lines 1-4, attached hereto as Exhibit 2; see also Deposition of J. Inge, page 35, lines 20-25, page 36, lines 1-3, attached hereto as Exhibit 1.*

21. Johnny Inge had the majority of the prescriptions filled at Bob's Budget Pharmacy. *See Deposition of J. Inge, page 32, lines 15-25, page 33, line 1, attached hereto as Exhibit 1.*

22. Johnny Inge controlled how many narcotic pills Elizabeth Inge received  *See Deposition of E. Inge, page 123, lines 7-9, attached hereto as Exhibit 2.*

23. Elizabeth Inge knew that what she, Johnny Inge, and Mr. Jones were doing was illegal. *See Deposition of E. Inge, page 12, lines 9-25, page 13, lines 6-7, attached hereto as Exhibit 2.*

24. Elizabeth Inge had no medical reason to take any of the pills prescribed to her or given to her by Johnny Inge. *See Deposition of E. Inge, page 11, lines 23-25, page 12, lines 1-8, page 19, line 25, page 20, lines 1-4, attached hereto as Exhibit 2; see also Deposition of E. Inge (pharmacy case), page 17, lines 11-13, attached hereto as Exhibit 4.*

25. Elizabeth Inge knew that she was using the prescriptions written by Mr. Jones to get drugs that were not prescribed for a valid medical purpose. *See Deposition of E. Inge (pharmacy case), page 28, lines 19-25, attached hereto as Exhibit 4.*

26. In approximately February 2015, Plaintiffs were granted immunity for their criminal acts in exchange for cooperating with and assisting the Drug Enforcement Agency in arresting Mr. Jones in February 2015. *See Deposition of J. Inge, page 44, lines 20-25, page 45, lines 1-12, attached hereto as Exhibit 1*; *see also Plaintiffs' Complaint [DOC 1-2]; see deposition of E. Inge (pharmacy case), page 31, lines 23-25, page 32, lines 1-25, page 33, lines 1-15, attached hereto as Exhibit 4.*

27. Plaintiffs are not aware of anyone at CMG (other than Mr. Jones) who knew that Johnny Inge was sharing his prescription medications with Mr. Jones prior to Mr. Jones' arrest. *See Deposition of J. Inge, page 77, lines 13-17, attached hereto as Exhibit 1; see also Deposition of E. Inge, page 94, lines 7-12, attached hereto as Exhibit 2.*

**Facts Surrounding Unfair Practices Act**

28. Prior to going to CMG, Elizabeth Inge had never seen any advertising materials from CMG. *See Deposition of E. Inge, page 108, lines 2-7, attached hereto as Exhibit 2.*

29. When Elizabeth Inge went to CMG, she does not remember talking to anyone other than Mr. Jones. *See Deposition of E. Inge, page 94, lines 4-6, attached hereto as Exhibit 2.*

30. Prior to Johnny Inges' deposition (taken October 23, 2017), Johnny Inge does not recall seeing any websites, advertising materials, or billboards published by CMG. *See Deposition of J. Inge, page, 47, lines 12-25, page 48, lines 1-12, attached hereto as Exhibit 1.*

31. Plaintiffs have not alleged any specific false or misleading statement made by CMG in connection with the sale of goods or services. *See Plaintiffs' Complaint [DOC 1-2].*

**Facts determined by *Inge v. McClelland*, 2017 U.S. Dist. LEXIS 98386 (D.N.M. June 26, 2017)[1]**

32. Plaintiffs participated in a "scheme to fill fraudulent prescriptions for narcotics." *Id*. at * 8.

33. "Plaintiffs' acquisition of narcotics through fraudulent prescriptions is a violation of federal and state law." *Id.* at * 8 (citing 21 U.S.C. § 843(a)(3) (providing, "[i]t shall be unlawful for any person knowingly or intentionally--…(3) to acquire or obtain possession of a controlled

---

[1] As discussed more fully below, the doctrine of collateral estoppel precludes the relitigation of the factual issues determined in *Inge v. McClelland.*

substance by misrepresentation, fraud, forgery, deception or subterfuge[.]"); NMSA 1978 § 30-31-23 ("It is unlawful for a person intentionally to possess a controlled substance unless the substance was obtained pursuant to a valid prescription or order of a practitioner while acting in the course of professional practice."); NMSA 1978 § 30-31-25 ("It is unlawful for any person:…(3) to intentionally acquire or obtain, or attempt to acquire or obtain possession of a controlled substance by misrepresentation, fraud, forgery, deception or subterfuge.").

34. "Plaintiffs instigated and actively participated in a scheme to acquire opioids through fraudulent prescriptions, they shared the fruits of their acquisition with Mr. Jones, and they abused and trafficked those prescription drugs." *Id.* at *14.

35. Plaintiffs violated state and federal drug trafficking statutes when they agreed to share narcotics with Mr. Jones. *Id.* at * 9 (citing NMSA 1978 § 30-31-20 (prohibiting possession of narcotic with intent to distribute) and 21 U.S.C. § 841 (a)(1) (same)).

36. Plaintiffs "worked in concert with Mr. Jones to present fraudulent prescriptions to a pharmacy and share those drugs with Mr. Jones." *Id.* at *20.

37. Plaintiffs' conduct was illegal under both federal and state law. *Id*. at * 19, 20.

38. "As a result of their illegal behavior, Plaintiffs suffered injuries to their health, their family, and their employment." *Id.* at * 14.

## II.
## Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 91 L. Ed. 2d 202, 106

S. Ct. 2505 (1986); *Smith v. Midland Brake, Inc.*, 138 F.3d 1304, 1307 (10th Cir. 1998). The moving party bears the initial burden of showing that there is an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). Once the moving party meets its burden, summary judgment is in order unless the nonmoving party "sets forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. A "genuine" factual dispute requires more than a mere scintilla of evidence. *Id.* at 252. In considering a summary judgment motion, the Court must view the evidence in the light most favorable to the nonmoving party. *Tom v. First Am. Credit Union*, 151 F.3d 1289, 1291 (10th Cir. 1998). Summary judgment is appropriate, however, if the nonmoving party's evidence is merely colorable or is not significantly probative. *Anderson*, 477 U.S. at 250-51. Thus, "'where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party,' summary judgment in favor of the moving party is proper." *Thomas v. IBM*, 48 F.3d 478, 484 (10th Cir. 1995) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986))

### III.
### Arguments and Authorities

**A. Plaintiffs are barred from recovery against CMG pursuant to the wrongful conduct rule because the undisputed facts demonstrate that they illegally obtained, possessed, and used narcotics, and that such illegal actions were the proximate cause of their injuries.**

The decision reached in *Inge v. McClelland*, 2017 U.S. Dist. LEXIS 98386 (D.N.M. June 26, 2017) requires a determination that Plaintiffs' claims against CMG are barred by the wrongful conduct rule. In *Inge v. McClelland,* Plaintiffs alleged that Bob's Budget Pharmacy negligently and illegally filled numerous prescriptions written by Jones. *Id.* at *5. Thereafter, Bob's Budget

9

Pharmacy filed a motion to dismiss, contending that all of Plaintiffs' claims are barred under the wrongful conduct rule.   Under the wrongful conduct rule, tort claims may be dismissed if:

> (1) the plaintiff's conduct is prohibited under a criminal statute; (2) there is a sufficient causal nexus between the plaintiff' illegal conduct and plaintiff's damages; and (3) the defendant's culpability is not greater than plaintiff's.

*Id*. at *15-16 (citing *Romero v. United States*, 159 F.Supp.3d 1275 (D.N.M. 2015) (holding that the wrongful conduct rule barred the plaintiff's recovery)).   As the court explained:

> It is a well settled rule of law that a person cannot maintain an action if, in order to establish his cause of action, he must rely, in whole or in part, on an illegal or immoral act or transaction to which he is a party, or where he must base his cause of action, in whole or in part, on a violation by himself of the criminal or penal laws…The principal of this public policy is this: No court will lend its aid to a man who founds his cause of action upon an immoral or illegal act.

*Id. at * 9 (quoting Desmet v. Sublett*, 54 N.M. 355, 225 P.2d 141, 142 (1950)).   In determining that Plaintiffs' claims were barred, the court determined that each of the elements under the wrongful conduct rule were met.   First, the court found that Plaintiffs' conduct violated state and federal law.   *Id.* at * 8 ("Plaintiffs' acquisition of narcotics through fraudulent prescriptions is a violation of state and federal law.").   Second, the court found that there was a sufficient causal connection between Plaintiffs' illegal conduct and Plaintiffs' damages.   *Id.* at * 14 ("[a]s a result of their illegal behavior, Plaintiffs suffered injuries to their health, their family, and their employment.").   Third, the court found that the pharmacy's culpability was not greater than Plaintiffs.   *Id.* at * 19 (Plaintiffs' "conduct, presenting false prescriptions, caused their alleged injuries or at least contributed to their injuries in at least the same degree as [the pharmacy's] illegal conduct in filing those prescriptions.").

Pharmacy filed a motion to dismiss, contending that all of Plaintiffs' claims are barred under the wrongful conduct rule.   Under the wrongful conduct rule, tort claims may be dismissed if:

> (1) the plaintiff's conduct is prohibited under a criminal statute; (2) there is a sufficient causal nexus between the plaintiff' illegal conduct and plaintiff's damages; and (3) the defendant's culpability is not greater than plaintiff's.

*Id*. at *15-16 (citing *Romero v. United States*, 159 F.Supp.3d 1275 (D.N.M. 2015) (holding that the wrongful conduct rule barred the plaintiff's recovery)).   As the court explained:

> It is a well settled rule of law that a person cannot maintain an action if, in order to establish his cause of action, he must rely, in whole or in part, on an illegal or immoral act or transaction to which he is a party, or where he must base his cause of action, in whole or in part, on a violation by himself of the criminal or penal laws…The principal of this public policy is this: No court will lend its aid to a man who founds his cause of action upon an immoral or illegal act.

*Id. at * 9 (quoting Desmet v. Sublett*, 54 N.M. 355, 225 P.2d 141, 142 (1950)).   In determining that Plaintiffs' claims were barred, the court determined that each of the elements under the wrongful conduct rule were met.   First, the court found that Plaintiffs' conduct violated state and federal law.   *Id.* at * 8 ("Plaintiffs' acquisition of narcotics through fraudulent prescriptions is a violation of state and federal law.").   Second, the court found that there was a sufficient causal connection between Plaintiffs' illegal conduct and Plaintiffs' damages.   *Id.* at * 14 ("[a]s a result of their illegal behavior, Plaintiffs suffered injuries to their health, their family, and their employment.").   Third, the court found that the pharmacy's culpability was not greater than Plaintiffs.   *Id.* at * 19 (Plaintiffs' "conduct, presenting false prescriptions, caused their alleged injuries or at least contributed to their injuries in at least the same degree as [the pharmacy's] illegal conduct in filing those prescriptions.").

The doctrine of collateral estoppel precludes the re-litigation of these issues. The elements of collateral estoppel are:

> (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*United States v. Rogers*, 960 F.2d 1501 (10th Cir. 1992), *cert. denied,* 121 L. Ed. 2d 689, 113 S. Ct. 817 (1992). Each of the four elements are met. First, the issues (elements 1 and 2 of the wrongful conduct rule) are identical with the issues presented in this action. Second, the prior action has been finally adjudicated on the merits (Plaintiffs' case against Bob's Budget Pharmacy was dismissed with prejudice).[2] Third, the parties against whom the doctrine is involved were parties to the prior adjudication. Fourth, Plaintiffs had a full and fair opportunity to litigate the issues in the prior action. Accordingly, based upon the doctrine of collateral estoppel, the Court should find, as a matter of law, that (1) Plaintiffs' conduct was illegal; and (2) Plaintiffs' illegal conduct resulted in Plaintiffs' alleged damages. Even if this court determines, however, that the doctrine of collateral does not apply in this case, Defendants are still entitled to summary judgment because the undisputed facts establish that (1) Plaintiffs' conduct was illegal; and (2) Plaintiffs' illegal conduct resulted in Plaintiffs' alleged damages.

The only remaining issue to address is whether CMG's culpability is greater than Plaintiffs. The answer is no. CMG's <u>alleged negligence</u> in hiring/supervising Mr. Jones cannot, as a matter of law, be a greater cause of Plaintiffs' injuries than Plaintiffs' own <u>illegal conduct</u>. *See Inge v.*

---

[2] The fact that there is a pending appeal of the court's decision in Inge v. McClelland should not preclude application of collateral estoppel. *See, e.g. Sullivan v. Hyland,* 647 F.Supp.2d 143, 173 (D.Conn. 2008).

11

*McClelland* at * 9 (holding that even though [the pharmacist's] conduct in dispensing unreasonably large quantities of narcotics to Plaintiffs violated state and federal law, and even though [the pharmacist's] conduct partially enabled Plaintiffs to abuse and traffic the drugs, [the pharmacist's] unlawful actions cannot be said to have been a greater cause of Plaintiffs' injuries than Plaintiffs' own unlawful behavior."); *Romero*, 159 F.Supp. 3d at 1282 (concluding that plaintiffs and defendants were equally at fault where even though the government "created, funded, and controlled" the illegal acts, the plaintiff's role as a broker in those transactions "contributed to bringing about his injuries, his injuries would not have occurred without his participation, and his participation was reasonably connected as a significant link to his injuries").  For the foregoing reasons, Plaintiffs' claims are barred by the wrongful conduct rule and CMG is entitled to summary judgment.

### B. Defendant is entitled to summary judgment on Plaintiffs' Unfair Practices Act Claim

Assuming, for purposes of argument only, that Plaintiffs need not rely on their own illegal conduct to prevail under the Unfair Practices Act, CMG is still entitled to summary judgment on Plaintiffs' Unfair Practices Claim.  Under New Mexico law, an "unfair or deceptive trade practice" means "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale of goods or services." NMSA 1978 § 57-12-2.  To establish a claim under the UPA, Plaintiffs must show that (1) CMG made an oral or written representation that was false or misleading; (2) the false or misleading representation was knowingly made in connection with the sale, lease, rental, or loan of goods or services; (3) the conduct complained of must have occurred in the regular course of CMG's trade

12

or commerce; and (4) the false or misleading representation must have been of the type that may tend to, or does deceive or mislead any person.  *Guidance Endodoctics, LLC v. Densply Inter, In*c., 749 F.Supp.2d 1235, 1259 (D.N.M. 2010).

From review of Plaintiffs' Complaint, Plaintiffs do not identify any actual oral or written statements made by CMG that were knowingly false or misleading.  *See Plaintiffs' Complaint [DOC 1-2].*  In addition, Plaintiffs admitted that they did not review any advertising of CMG or statements by CMG that deceived or mislead them.  *See UMF Nos. 28-30.*  CMG is entitled to summary judgment on Plaintiffs' Unfair Practices Act claim.

**WHEREFORE**, Defendant respectfully requests that the Court grant its motion for summary judgment and for such other relief as the Court deems proper.

    Respectfully submitted,

    ATWOOD, MALONE, TURNER & SABIN, P.A.

    */s/ Lee M. Rogers, Jr.*
    Lee M. Rogers, Jr.
    Carla Neusch Williams
    Quincy J. Perales
    P.O. Drawer 700
    Roswell, New Mexico 88202-0700
    (575) 622-6221
    *Attorneys for Defendant Covenant Medical Group*

I HEREBY CERTIFY that on December 7, 2017, I filed the foregoing instrument Electronically through the Court's Mandatory Electronic Filing system which caused all parties of record to be served by electronic means, as more fully reflected on the emailed Notice of Electronic Filing received from the Court.

*Electronically Filed /s/ Lee M. Rogers, Jr.*
Lee M. Rogers