IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ELIZABETH INGE and JOHNNY INGE,

    Plaintiffs,

v.                                                                                     No. 17-cv-0221 SMV/CG

COVENANT MEDICAL GROUP,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendant Covenant Medical Group's Motion for Summary Judgment [Doc. 44], filed on December 7, 2017. Briefing is complete. [Docs. 53, 61]. Oral argument is not necessary because the motion can be decided on the briefs. Having considered the briefing, record, and the relevant law, the Court finds that the motion is well-taken and will be granted. Plaintiffs' claims and this civil action will be dismissed with prejudice.

### I. Background[1]

Plaintiffs participated in an illegal scheme to obtain prescription painkillers in violation of federal and state laws. Their co-conspirator was David Jones, a nurse practitioner. Jones saw Johnny Inge as a patient at the Portales Medical Clinic (a clinic not affiliated with Covenant) from 2004 to 2013. Jones knew that Johnny Inge was a drug addict. Jones was an addict himself. In 2011, Jones began giving Johnny Inge fraudulent prescriptions for large quantities of

---

[1] Unless otherwise attributed, this version of the facts is synthesized from the record in this case and the district and circuit court opinions in *Inge v. McClelland*, 257 F. Supp. 3d 1158 (D.N.M. 2017) and No. 17-2109, slip op., 2018 U.S. App. LEXIS 3921, 2018 WL 985740 (10th Cir. Feb. 20, 2018) (unpublished).

narcotic painkillers in exchange for a portion of the pills. Some of those prescriptions were written in Johnny Inge's name. At other times, Jones would give Johnny Inge prescriptions made out to other individuals, including Elizabeth Inge. Johnny Inge began sharing the fraudulently-obtained narcotics with Elizabeth Inge sometime around 2012. She was aware of the illegal scheme and willingly participated in it. The scheme was temporarily suspended in 2013 when Jennifer Inge, Johnny's wife at the time, discovered some of the fraudulent prescriptions.

Jones was hired by Covenant in 2014. He sent Johnny Inge a text message saying he was "back in business." Johnny Inge scheduled an appointment with Jones, purportedly for a sinus infection, and the scheme resumed. They went to great lengths to conceal their illegal activity. For example, Jones might leave the prescriptions in an alley behind his house, or in his car. Johnny Inge would retrieve the prescriptions, get them filled, and then leave Jones' share of the pills in the alley or Jones' car. Elizabeth Inge was aware of these arrangements and accompanied Johnny on at least one occasion when he picked up prescriptions from the alley behind Jones' house.

At some point Elizabeth began seeing Jones at Covenant as a patient herself. Jones started writing fraudulent prescriptions for her as well.[2] During the period Jones saw Elizabeth

---

[2] Jones had given Johnny fraudulent prescription in Elizabeth's name while he was still working at Portales Medical Clinic, perhaps as early as 2012. At that time, Elizabeth was aware that Johnny was getting fraudulent prescriptions from Jones, and Johnny shared those pills with her. It is not clear whether it was she or Johnny, or both, who filled those prescriptions from 2012 to 2013.

at Covenant, he prescribed more than a thousand oxycodone pills for her every month.³ There was no medical necessity for these prescriptions.

Such schemes typically end badly, and this one was no exception. Jones was arrested in February of 2015 and charged with dispensing a controlled substance without a legitimate medical purpose. He committed suicide shortly before he was scheduled to plead guilty.⁴ Robert McClelland, the pharmacist who filled most of the prescriptions, was criminally charged and had his pharmacist's license suspended.⁵ Plaintiffs avoided prosecution by agreeing to cooperate with federal authorities in Jones' arrest and prosecution. Plaintiffs lost income and job opportunities. Elizabeth Inge suffered an overdose and lost custody of her child. Both suffered heavy withdrawal symptoms when the scheme was finally terminated.

Plaintiffs have filed at least three lawsuits seeking compensation for damages resulting from their illegal scheme. They sued McClelland in federal court.⁶ That case was dismissed.⁷ They have an action pending in state court against Jones' estate.⁸ And in this action they seek damages from Covenant based on negligence, negligent hiring, unfair trade practices, and breach of fiduciary duty.

---

³ Joint Status Report [Doc. 9] at 3. "Over a nine month period[,] Jones prescribed Plaintiff(s) over nine thousand pills." *Id.* at 4.

⁴ *See Inge v. McClelland*, No. 17-2109, slip op. at 2 n.1, 2018 U.S. App. LEXIS 3921, at *2 n.1, 2018 WL 985740 (10th Cir. Feb. 20, 2018) (unpublished); *United States v. Jones*, 15-mj-0670 KBM, [Docs. 18, 19, 20, 21].

⁵ *See Inge v. McClelland*, 257 F. Supp. 3d 1158, 1161 n.1 (D.N.M. 2017).

⁶ *Inge v. McClelland*, 16-cv-1232 JAP/KRS.

⁷ *Inge v. McClelland*, 257 F. Supp. 3d 1158 *aff'd* No. 17-2109, 2018 U.S. App. LEXIS 3921.

⁸ *Inge v. Est. of Jones*, D-905-cv-201700302.

## II. Summary Judgment Standard

Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on the issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

The movant bears the initial burden of establishing that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). "[T]he movant need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim." *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000). If this burden is met, the non-movant must come forward with specific facts, supported by admissible evidence, which demonstrate the presence of a genuine issue for trial. *Celotex*, 477 U.S. at 324. The non-moving party cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment. *See Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988). Rather, the non-movant has a responsibility to "go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [his] case in order to survive summary judgment." *Johnson v. Mullin*, 422 F.3d 1184, 1187 (10th Cir. 2005) (alteration in original) (internal quotation marks omitted).

At the summary judgment stage, the Court must view the facts and draw all reasonable inferences in the light most favorable to the non-movant. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court's function "is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. There is no issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* Summary judgment may be granted where "the evidence is merely colorable, or is not significantly probative." *Id.* at 249–50 (internal citation omitted).

### III. The Wrongful Conduct Rule

The wrongful conduct rule is a well-settled rule of law:

> that a person cannot maintain an action if, in order to establish his cause of action, he must rely, in whole or in part, on an illegal or immoral act or transaction to which he is a party, or where he must base his cause of action, in whole or in part, on a violation by himself of the criminal or penal laws.

*Desmet v. Sublett*, 1950-NMSC-057, ¶ 9, 225 P.2d 141, 142.

> "The principle of this public policy is this: No court will lend its aid to a man who founds his cause of action upon an immoral or illegal act." [*Desmet*, 1950-NMSC-057]. Notably, the wrongful conduct rule forecloses recovery by the plaintiff even where "the defendant has participated equally in the illegal activity." *Orzel v. Scott Drug Co.*, 449 Mich. 550, 537 N.W.2d 208, 212–13 (1995).
> The contours of the wrongful conduct rule require that "the plaintiff's conduct must be prohibited or almost entirely prohibited under a penal or criminal statute," and that "a sufficient causal nexus must exist between the plaintiff's illegal conduct and the plaintiff's asserted damage." *Id.* at 214–17. Further, "the defendant's culpability [must not be] greater than the plaintiff's culpability for the injuries[. . . . ]" *Id.* at 217 (citation omitted).

5

*Romero v. United States*, 159 F. Supp. 3d 1275, 1280-81 (D.N.M. 2015) *aff'd* 658 F. App'x 376 (10th Cir. 2016).

The plaintiff in *Romero*, a recovering drug addict, brought claims against several DEA agents for rekindling his addiction to crack cocaine. 159 F. Supp. 3d at 1279. He alleged that he had been clean for a few months and had been taking steps to get his life together. *Id.* at 1277. The DEA agents allegedly directed a confidential informant to approach Romero and propose that he act as a broker to obtain crack. In exchange, Romero would be allowed to keep some of the crack for his personal use. *Id.* at 1281. He accepted the offer, and over a period of six months purchased crack several times for the confidential informant, each time keeping a portion of the drugs for himself. This allegedly "reignited" his addiction, causing him to suffer damages. *Id.*

The Honorable Martha Vázquez, United States District Judge, dismissed Romero's claims under the wrongful conduct rule. *Id.* at 1282. Romero argued that the wrongful conduct rule should not apply because the government's conduct was a proximate cause of his injuries. Judge Vázquez found that the wrongful conduct rule was not precluded merely because there was more than one proximate cause of the plaintiff's injuries (i.e., Romero's conduct and the government's conduct). *Id.* at 1283. The Tenth Circuit affirmed Judge Vázquez's application of the wrongful conduct rule. *Romero*, 658 F. App'x at 379–80.

Other courts have applied the wrongful conduct rule (or analogous doctrines) to bar claims similar to those brought here by Plaintiffs. *See Orzel v. Scott Drug Co.*, 537 N.W.2d 208, 217–18 (Mich. 1995) (holding that the plaintiff's negligence claim against a pharmaceutical

6

company for honoring her husband's fraudulent prescriptions, which led to his death, was barred by the wrongful conduct rule because his injuries resulted from his own wrongful conduct); *Price v. Perdue Pharma Co.,* 920 So. 2d 479, 481–86 (Miss. 2006) (holding that the plaintiff's malpractice claims against doctors and a pharmacy were barred by the wrongful conduct rule because the plaintiff's injuries resulted from his own illegal conduct in misrepresenting his medical history in order to obtain multiple prescriptions for OxyContin, a strong painkiller and a controlled medication); *Jacobson v. Pfizer*, 618 F. App'x 509, 511–12 (11th Cir. 2015) (upholding dismissal of the plaintiff's tort claims against pharmaceutical company based on the wrongful conduct doctrine, despite plaintiff's arguments that he was insane when he killed his wife and children as a result of defendant's drugs that put him into a manic and psychotic state); *Foister v. Purdue Pharma, L.P.*, 295 F. Supp. 2d 693 (E.D. Ky. 2003) (holding that the plaintiffs, who procured and used OxyContin illegally, could not recover in tort action against pharmaceutical company because the plaintiffs inevitably had to rely on their illegal actions to establish their claims); *Pappas v. Clark*, 494 N.W.2d 245 (Iowa Ct. App. 1992) (holding that the plaintiff's cause of action against his doctor and pharmacist was barred by his own illegal conduct in using cocaine and prescription drugs).

In Plaintiffs' lawsuit brought against the pharmacist, *McClelland*, the Honorable James A. Parker, Senior United States District Judge, found, in pertinent part:

> [The plaintiffs, Elizabeth Inge and Johnny Inge], as part of a scheme to traffic in controlled substances, initiated contact with [McClelland] to fill prescriptions that they knew were not valid. Even though [McClelland]'s conduct in dispensing unreasonably large quantities of narcotics to [the Inges] violated state and federal law, and even though [McClelland]'s conduct partially enabled

7

> [the Inges] to abuse and traffic the drugs, [McClelland]'s unlawful actions cannot be said to have been a greater cause of [the Inges]' injuries than [the Inges]' own unlawful behavior.

257 F. Supp. 3d 1158. The Tenth Circuit affirmed Judge Parker's decision on February 20, 2018, holding that:

> Even if [McClelland] also engaged in illegal conduct, breached his duties to the Inges, and benefited financially from the scheme, as the Inges argue, his conduct does not negate the Inges' own misconduct. The district court correctly applied the wrongful-conduct doctrine because there is no dispute that the Inges' lawsuit relies, at least in part, on their own illegal acts.

*McClelland*, No. 17-2109, slip op. at 6–7, 2018 U.S. App. LEXIS 3921, at *8.

## IV. Undisputed Material Facts

For purposes of this motion for summary judgment, the Court finds the following material facts to be undisputed:

1. Jones started working for Defendant in its Clovis clinic on March 17, 2014. Defendant's UMF no. 13 [Doc. 44] at 4; Plaintiffs' stipulation [Doc. 53] at 2.

2. After Jones became an employee of Covenant, Jones contacted Johnny Inge and advised that he was working at Covenant. Defendant's UMF no. 14 [Doc. 44] at 4; Plaintiffs' stipulation [Doc. 53] at 2.

3. During Johnny Inge's first visit to Covenant with Jones, Jones gave Johnny Inge one prescription for oxycodone to be scanned into the medical chart. Defendant's UMF no. 15 [Doc. 44] at 5; Plaintiffs' stipulation [Doc. 53] at 2.

4. During the same visit, Jones wrote additional prescriptions, put them in Johnny Inge's pocket, and asked Johnny Inge to get them filled. Defendant's UMF no. 16 [Doc. 44] at 5; Plaintiffs' stipulation [Doc. 53] at 2.

5. Johnny Inge did not show anyone at Covenant the prescriptions that Jones placed in his pocket. Defendant's UMF no. 17 [Doc. 44] at 5; Plaintiffs' stipulation [Doc. 53] at 2.

6. Thereafter, Johnny Inge began picking up prescriptions for himself and Elizabeth Inge and presenting them to Bob's Budget Pharmacy for the purpose of obtaining pills for themselves and Jones. Defendant's UMF no. 18 [Doc. 44] at 5; Plaintiffs' response [Doc. 53] at 4 (Plaintiffs claim that there is a material dispute, but their allegations and citations to the record evidence no material dispute).

7. Johnny Inge would pick up these prescriptions in (a) Jones' vehicle; (b) the alley of Jones' home; and (c) Grady, NM (40 miles from Clovis) to avoid detection. Defendant's UMF no. 19 [Doc. 44] at 5; Plaintiffs' response [Doc. 53] at 4 (Plaintiffs claim that there is a material dispute, but their allegations and citations to the record evidence no material dispute).

8. On at least one occasion, Elizabeth Inge accompanied Johnny Inge when he picked up prescriptions from Jones' car and left pills in his car. Defendant's UMF no. 20 [Doc. 44] at 5–6; Plaintiffs' response [Doc. 53] at 4–5 (Plaintiffs claim that there is a material dispute, but their allegations and citations to the record evidence no material dispute).

9. Johnny Inge had the majority of the prescriptions filled at Bob's Budget Pharmacy. Defendant's UMF no. 21 [Doc. 44] at 6; Plaintiffs' stipulation [Doc. 53] at 2.

10. Johnny Inge controlled how many narcotic pills Elizabeth Inge received. Defendant's UMF no. 22 [Doc. 44] at 6; Plaintiffs' response [Doc. 53] at 5 (Plaintiffs claim that there is a material dispute, but their allegations and citations to the record evidence no material dispute).

11. Elizabeth Inge knew that what she, Johnny Inge, and Jones were doing was illegal. Defendant's UMF no. 23 [Doc. 44] at 6; Plaintiffs' response [Doc. 53] at 5 (Plaintiffs

claim that there is a material dispute, but their allegations and citations to the record evidence no material dispute).

12. Elizabeth Inge had no medical reason to take any of the pills prescribed to her or given to her by Johnny Inge.  Defendant's UMF no. 24 [Doc. 44] at 6; Plaintiffs' response [Doc. 53] at 5–6 (Plaintiffs claim that there is a material dispute, but their allegations and citations to the record evidence no material dispute).

13. Elizabeth Inge knew that she was using the prescriptions written by Jones to get drugs that were not prescribed for a valid medical purpose.  Defendant's UMF no. 25 [Doc. 44] at 6; Plaintiffs' response [Doc. 53] at 6 (Plaintiffs claim that there is a material dispute, but their allegations and citations to the record evidence no material dispute).

14. In approximately February 2015, Plaintiffs were granted immunity for their criminal acts in exchange for cooperating with and assisting the Drug Enforcement Agency in arresting Jones in February 2015.  Defendant's UMF no. 26 [Doc. 44] at 6; Plaintiffs' response [Doc. 53] at 6 (Plaintiffs claim that there is a material dispute, but their allegations and citations to the record evidence no material dispute).

15. Plaintiffs are not aware of anyone at Covenant (other than Jones) who knew that Johnny Inge was sharing his prescription medications with Jones prior to Jones' arrest.  Defendant's UMF no. 27 [Doc. 44] at 6; Plaintiffs' response [Doc. 53] at 6–7 (Plaintiffs claim that there is a material dispute, but their allegations and citations to the record evidence no material dispute).

### V. Analysis

The undisputed facts establish that Plaintiffs' own conduct was illegal.  Plaintiffs' conduct was a proximate cause of their injuries, and their culpability is at least as great as Defendant's.  Therefore, the wrongful conduct rule bars Plaintiffs' claims.

## A. The wrongful conduct rule applies.

Reading Plaintiffs' Response to the Motion for Summary Judgment very liberally, Plaintiffs appear to make two arguments against application of the wrongful conduct rule. First, they suggest (somewhat incredibly) that their own conduct was neither wrongful nor illegal. Second, they argue that even if they engaged in illegal conduct, the wrongful conduct rule should not bar their claims because Defendant's culpability was greater than theirs. These arguments are unpersuasive.

### 1. Plaintiffs' conduct was illegal.

Plaintiffs implicitly argue that their own conduct was not wrongful. For example, they assert that:

- Jones admitted that Plaintiffs were not at fault. [Doc. 53] at 2, 4, 9.

- Jones told law enforcement that the prescriptions he wrote for Plaintiffs were always written for some valid reason and never for nothing. *Id.* at 2, 4, 6, 9.

- It was "rare" that Plaintiffs shared any pills with Jones. *Id.* at 2, 4.

- Elizabeth Inge never agreed to share pills with Jones, never knew the particulars of Johnny Inge's deal with Jones, and never spoke to Jones about the deal. *Id.* at 3, 9.

- "There was nothing illegal about the Plaintiffs presenting prescriptions to be filled at Bob's Pharmacy." *Id.* at 4, 5, 8.

- Law enforcement was not interested in prosecuting Plaintiffs. *Id.* at 6.

- Johnny Inge did not benefit financially from his deal with Jones. *Id.* at 9.

None of these purported facts is material. What Jones told the DEA is immaterial. Whether Jones accepted responsibility for the illegal scheme is immaterial. Whether Plaintiffs were prosecuted is immaterial. Whether Johnny Inge benefitted financially from the scheme is immaterial. What *is* material is that the acquisition of narcotics through fraudulent prescriptions is a violation of federal and state law. *See* 21 U.S.C. § 843(a)(3) (providing, "[i]t shall be unlawful for any person knowingly or intentionally— . . . (3) to acquire or obtain possession of a controlled substance by misrepresentation, fraud, forgery, deception, or subterfuge[.]"); NMSA 1978, § 30-31-23 ("It is unlawful for a person intentionally to possess a controlled substance unless the substance was obtained pursuant to a valid prescription or order of a practitioner while acting in the course of professional practice."); NMSA 1978, § 30-31-25 ("It is unlawful for any person: . . . (3) to intentionally acquire or obtain, or attempt to acquire or obtain possession of a controlled substance by misrepresentation, fraud, forgery, deception or subterfuge."). Plaintiffs' conduct was illegal.[9] As the Tenth Circuit held in *McClelland*, "The district court correctly applied the wrongful-conduct doctrine because there is no dispute that the Inges' lawsuit relies,

---

[9] Because Johnny Inge admits to sharing the narcotics with Elizabeth Inge and Jones, he also violated state and federal drug trafficking statutes. *See* NMSA 1978, § 30-31-20 (prohibiting possession of narcotic with intent to distribute) and 21 U.S.C. § 841(a)(1) (same). Although Elizabeth Inge admits to fraudulently obtaining her prescriptions, [Doc. 44-4] at 4 (page 17 of deposition transcript) (admitting she knew there was no medical necessity for the drugs Jones prescribed for her), she denies sharing her pills with Jones, [Doc. 44-2] at 3 (page 11 of deposition transcript). Her testimony is unclear, in that it could be interpreted in one of two ways: (1) Johnny filled the prescriptions that were written in her name and then shared half the pills with Jones before she ever saw any, or (2) while Jones demanded half of the pills he prescribed for Johnny, he did not demand any of the pills he prescribed for her (which seems highly unlikely). Regardless, she admits presenting at least some of the fraudulent prescriptions for filling, knowing they were fraudulent. *See* [Doc. 53-4] at 6–7 (pages 44–45 of the deposition transcript) ("I can't tell [which prescriptions I filled] and which ones Johnny did. But I guarantee you, eight times out of ten, it was him.").

12

at least in part, on their own illegal acts." No. 17-2109, slip op. at 6–7, 2018 U.S. App. LEXIS 3921, at *8. There is no credible basis for arguing that Plaintiffs' conduct was not illegal

### 2. There is a causal nexus between Plaintiffs' illegal conduct and their asserted damages.

It is beyond question that Plaintiffs' participation in the illegal scheme to obtain narcotic painkillers was a proximate cause of their alleged injuries. They obtained the prescriptions from Jones knowing they were fraudulent; they got the prescriptions filled; they consumed the drugs. All their damages flow, at least in part, from their own actions. That the conduct of others (Jones, McClelland, Defendant) may have contributed to those damages is irrelevant. Under New Mexico law, there may be more than one proximate cause of an injury. UJI 13-305 NMRA; *Andrews v. Taylor*, 2003-NMCA-132, ¶ 23, 134 N.M. 545. "Thus, it is not necessary to show that a party's conduct was 'the' proximate cause of the injuries—showing that the party's conduct was 'a' proximate cause of the injuries is sufficient." *Romero*, 159 F. Supp. 3d at 1283 (quoting *Orzel*, 537 N.W.2d at 216). The causation limitation under the wrongful conduct rule is satisfied by the facts of this case.

### 3. Plaintiffs were at least as culpable as Defendant in causing their injuries.

Plaintiffs argue that Defendant's culpability was greater than theirs. For example, Plaintiffs assert that:

- Jones was a long-time addict. [Doc. 53] at 1.

- Jones lied on his application for employment with Defendant when he denied that his nursing license had been suspended in the past. *Id.*

13

- The records from the nursing licensing board were readily available, if Defendant had simply sought them out. *Id.*

- Defendant knew that Jones lied on his employment application but hired him anyway. *Id.* at 11.

- Defendant failed to supervise Jones and, therefore, failed to catch his excessive prescribing of narcotics. *Id.* at 1.

- Jones utilized the prescription pad provided by Defendant to write the excessive prescriptions for Plaintiffs. *Id.* at 16.

- Jones would fall off of his chair from being so high on drugs at work. *Id.* at 6, 7.

- Jones would be unable to write prescriptions properly from being so high on drugs at work. *Id.* at 14.

- The pharmacist, McClelland, talked to Jones's female staff member in December of 2014 about Johnny Inge's prescriptions. *Id.* at 6.

- Defendant sent a letter to McClelland on August 22, 2014, explaining that Johnny Inge needed so much prescription pain medication due to his intractable pain. *Id.* at 7.

Again, none of these purported facts is material. At best, they show that Jones was a bad actor and that Defendant was negligent in hiring him or in failing to detect his illegal activity. Plaintiffs have come forward with no evidence that Defendant was aware of the illegal activity, knowingly participated in it, or did anything intentionally to promote it. Plaintiffs intentionally and willfully participated in the illegal activity, and they intentionally assisted Jones in

14

concealing the illegal activity. It is specious to argue that one who negligently fails to prevent or detect an illegal scheme is more culpable than those who actively participated in the scheme.

In *Romero*, it was undisputed that the government was an active participant in the illegal activity (the sale of illegal drugs). 159 F. Supp. 3d at 1281. Indeed, Judge Vázquez found that the government played a "pivotal role in making the drug distribution activities possible." *Id*. at 1282. Yet even under those facts—where the defendants had devised, guided, and actively participated in the illegal conduct—Judge Vázquez found that "Plaintiff's role was equally pivotal: he agreed to the informants' offers that he broker drug deals in exchange for crack, and proceeded to broker drug deals in exchange for crack . . . for approximately six months." *Id*.

And in the *McClelland* case, Judge Parker dismissed Plaintiffs' claims under the wrongful conduct rule, even after finding (or at least assuming) that McClelland had violated federal and state law in filling the prescriptions. 257 F. Supp. 3d at 1168 ("Even though Defendant's conduct in dispensing unreasonably large quantities of narcotics to Plaintiffs violated state and federal law, and even though Defendant's conduct partially enabled Plaintiffs to abuse and traffic the drugs, Defendant's unlawful actions cannot be said to have been a greater cause of Plaintiffs' injuries than Plaintiffs' own conduct."). The Court is not persuaded by Plaintiffs' argument that they were less culpable than Defendant.[10] Under any reasonable view

---

[10] Plaintiffs discuss three Supreme Court cases that address the *in pari delicto* doctrine as it applies in federal securities and antitrust cases. [Doc. 53] at 19, 18–20 (citing *Perma Life Mufflers, Inc. v. Inter'l Parts Corp.,* 392 U.S. 134, 146 (1968); *Bateman Eichler, Hill Richards, Inc. v. Berner,* 472 U.S. 299, 310–11 (1985); *Pinter v. Dahl,* 486 U.S. 622, 636 (1988)). Plaintiffs also discuss *Roma Constr. Co. v. aRusso,* 96 F.3d 566 (1st Cir. 1996), a civil RICO case. The facts of these cases and the causes of action are not at all similar to those at bar, and it is unclear why these cases are cited. Plaintiffs offer no explanation whatsoever. Reading the brief liberally, the Court surmises the argument to be that the wrongful conduct doctrine should not bar a claim unless the plaintiff is more culpable than the defendant. But that balancing of culpability is expressly recognized in *Orzel*, *Romero*, and

of the undisputed facts, Plaintiffs were at least as culpable as Defendant in causing their injuries.[11]

## B. The wrongful conduct rule was not waived.

Plaintiffs argue that Defendant waived the wrongful conduct rule as an affirmative defense by failing to specifically plead it in the Answer.[12] [Doc. 30]. "In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense[.]" Fed. R. Civ. P. 8(c). The wrongful conduct rule is an affirmative defense to Plaintiffs' claims. *See Stringfellow v. Oakwood Hosp. & Med. Ctr.*, 409 F. Supp. 2d 866, 872 (E.D. Mich. 2005) (acknowledging that wrongful conduct rule is an affirmative defense). However, in applying the pleading rules established by the Federal Rules of Civil Procedure, courts strive to "avoid hyper-technicality in pleading requirements and focus, instead, on enforcing the actual purpose of the rule." *Creative Consumer Concepts, Inc. v. Kreisler*, 563 F.3d 1070, 1076 (10th Cir. 2009) (internal quotation marks omitted). Further,

> in determining whether an issue should be treated as an affirmative defense for purposes of pleading, the critical question (absent a

---

*McClelland*, which have facts that are similar to those at bar. Thus, it is not clear where Plaintiffs are going with the argument. It would have been more helpful to the Court had Plaintiffs analyzed cases with facts similar to those in the instant case, rather than cases arising under federal regulatory statutes.

[11] As mentioned earlier, other courts have reached the same conclusion in cases involving similar facts. *See Orzel*, 537 N.W.2d at 217–18; *Price*, 920 So. 2d at 481–86; *Jacobson*, 618 F. App'x at 511–12; *Foister*, 295 F. Supp. 2d 693; *Pappas*, 494 N.W.2d 245; *Romero*, 159 F. Supp. 3d at 1280-81 *aff'd* 658 F. App'x 376; *Inge,* 257 F. Supp. 3d 1158 *aff'd* No. 17-2109, slip op., 2018 U.S. App. LEXIS 3921. Plaintiffs cite no case (with similar facts) to the contrary.

[12] Defendant has filed a motion to amend the Answer to raise the wrongful conduct rule as an affirmative defense. [Doc. 28]. Plaintiffs argue that the motion should be denied because Defendant was not diligent in asserting the defense. [Doc. 30] at 3. Plaintiffs also argue that their own conduct was not at least equally culpable to that of Defendant and, therefore, allowing the defense would be futile. *Id.* at 5–6. The Court has rejected this argument *supra.*

> contrary command by statute or rule, such as the list of affirmative defenses in Rule 8(c)) is whether requiring the defendant to plead the matter is necessary *to avoid surprise and undue prejudice* by providing the plaintiff with notice and the opportunity to demonstrate why the affirmative defense should not succeed.

*In re ZAGG Inc. S'holder Derivative Action*, 826 F.3d 1222, 1231 (10th Cir. 2016) (internal quotation marks omitted) (emphasis added). The wrongful conduct doctrine is not included in Rule 8(c)'s non-exhaustive list of affirmative defenses. Plaintiffs point to no surprise or unfair prejudice. *See* [Docs. 30, 53]. Indeed, based on the nature of the allegations in the complaint and the Joint Status Report, Plaintiffs reasonably should have known that their recovery would likely be limited or barred by their own misconduct. What is more, Plaintiffs were on actual notice that their claims against Defendant would likely be barred when Judge Parker dismissed their case against McClelland. *See McCelland*, 257 F. Supp. 3d 1158. Entertaining the wrongful conduct rule neither surprises nor unfairly prejudices Plaintiffs.

## Conclusion

Plaintiffs engaged in illegal conduct to obtain prescription medications. That illegal conduct was a proximate cause of their injuries. Their culpability was at least as great as Defendant's. The wrongful conduct rule bars Plaintiffs' claims.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Defendant's Motion for Summary Judgment [Doc. 44] is **GRANTED**. Plaintiffs' claims against Defendant and this action are **DISMISSED with prejudice**.

**IT IS FURTHER ORDERED** that the JURY TRIAL set for May 21, 2018, is **VACATED**.

**IT IS FURTHER ORDERED** that other pending motions [Docs. 28, 54] are **DENIED as moot**.

**IT IS SO ORDERED**.

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**